UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SHIVON BELTRAN, individually, and as next friend for L.N.R., a minor child, | § § § § | |
| Plaintiff | § § § | CAUSE OF ACTION: |
| v. | § § | 1:22-cv-00015 |
| THE CITY OF AUSTIN and OFFICER JOHN DOE, | § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Shivon Beltran, individually and as next friend of L.N.R., a minor, brings this 42 U.S.C. § 1983 case against the City of Austin and Officer John Doe for the excessive force its policies and officers inflicted on her daughter.

### I. PARTIES

1. Plaintiff Shivon Beltran, individually and as next friend of L.N.R., a minor, is a resident of Travis County, Texas.

2. Defendant City of Austin is a municipality that operates the Austin Police Department and may be served through its City Clerk at 301 W. 2nd Street, Austin, TX 78701. *Service is hereby requested at this time.*

### II. JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over this 42 U.S.C. § 1983 action pursuant to 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), as all relevant events occurred in this division, and the Defendant operates in this state and division.

### III. FACTS

5. On or around June 23, 2021, the Austin Police Department obtained a warrant to search the home of Shivon Beltran and arrest her son.

6. When they arrived outside Ms. Beltran's home, they announced their intentions and told the people inside to exit. In addition to Ms. Beltran and her son, Ms. Beltran's 15-year-old daughter was inside.

7. Ms. Beltran's daughter was not suspected of committing any crime and simply lived at the house.

8. Ms. Beltran informed the officers that she had two dogs and needed to put them in her garage area before her son and daughter exited.

9. After she had put the dogs in a safe place, Ms. Beltran exited her home with her hands raised.

10. She exited as instructed and was placed by the APD officers on scene behind a vehicle.

11. Her son exited next.

12. The APD officers on scene yelled to get on his knees and crawl backwards. He did so and was taken into custody without incident.

13. Terrified, his fifteen-year-old sister – who had just completed ninth grade – watched as APD officers yelled at and degraded her family members.

14. APD officers then yelled for the young girl to exit. She walked backwards as instructed until she feared she might fall.

15. She turned around so that she did not fall.

16. She posed no threat or danger to anyone.

17. She was an obviously unarmed fifteen-year old girl.

18. Despite this, an APD officer shot her with a kinetic projectile fired from his shotgun.

19. Upon information and belief, he is believed to be Officer Warren, badge number 8677.

20. The shooting was unreasonable, dangerous, and completely unjustified, as the young girl posed no threat or danger to anyone.

21. She was simply a frightened ninth grader concerned for her safety and the safety of her family.

22. After she was shot, she fell injured to the ground.

23. Rather than help her as she lay wounded, upon information and belief, the shooter and other APD officers yelled at her to crawl back to them.

24. In other words, just as they had done with vicious regularity more than a year earlier at the George Floyd protests on May 30, 2020, and May 31, 2020, an APD officer shot a defenseless person.

25. Moreover, he shot this defenseless and harmless teenage girl for no legitimate reason and then compounded the patently unreasonable conduct by further dehumanizing her.

26. Despite knowing that one of its officers shot a young girl with no justification, senior ranking APD officers did not discipline the shooter, discipline or question any of the on scene officers for failing to prevent the conduct, or even make the District Attorney's Office aware of the shooting.

27. Instead, they detained the young girl in handcuffs as if she were a criminal rather than a victim of an unjustified assault with a potentially deadly weapon.

28. As a proximate consequence of APD and its officers' conduct, L.N.R. suffered serious injuries.

29. Sadly, this incident is part of APD's long pattern of firing bean bag shotguns unsafely and dangerously

30. Prior to the time of this assault, APD had shot numerous individuals who, like L.N.R., posed no threat or danger to anyone.

31. Among others, individuals shot with kinetic projectiles by APD with shotguns who posed no danger to anyone include Justin Howell, Anthony Evans, Maredith Drake, Arianna Chavez, Levi Ayala, Cesar Fuentez, Steven Arawn, Jose Herrera, Tracy Cates, Christen Warkoczewski, and Nicole Underwood to name just a few.

32. Moreover, APD had a long-standing policy of treating its police force as a paramilitary organization, training its officers to act as "warriors," and see conflict with members of the public as inevitable as part of an "us vs. them" culture.

33. Officers were even trained to be "indifferent to the community," according to a report commissioned by the City.

34. APD's training academy also taught cadets – who later became APD officers – to act as if they were at war with the community they were supposed to be protecting.

35. In one incident, discussed in a report, an academy instructor told cadets that if "anyone here says they want to be a police officer to 'help people,' I will punch you in the face."

36. Another instructor was documented as telling cadets to "pick someone out of a crowd, and ask yourself, 'how could I kill that person?'"

37. A report commissioned by the City found that officers were trained to see "the Austin community [as] the enemy."

38. This report further found that "the culture of a police training academy reflects the culture of a department and impacts the mindset and approach to policing."

39. As a direct and proximate result, before this incident, numerous other people suffered severe and devastating injuries as a result of APD's excessive force and dangerous misuse of bean bag shotguns.

40. According to Dell Medical Center's physicians, seven victims required surgical interventions and four victims, retained portions of the "bean bag" shotgun rounds in their bodies/heads.

41. According to an article authored by the Dell Medical Center physicians, these victims suffered intercranial hemorrhages, depressed skull fractures, depressed frontal bone fracture, fractured jaws, and brain damage.

42. Upon information and belief, Chief Chacon and former Chief Manley reviewed this article, or were made aware of the findings.

43. Despite this, and despite knowing that numerous officers shot innocent people with kinetic projectiles fired from bean bag shotguns, to date no officers who previously unreasonably shot individuals with bean bag rounds/kinetic projectiles have been disciplined by the City.

44. More particularly, none of the officers who shot the individuals listed in Paragraph 31 have been disciplined by the City or APD.

45. And no one who failed to intercede and stop this shockingly dangerous conduct has been disciplined or even investigated.

46. And none of the shooters' supervisors or leadership at APD have been disciplined either.

47. Moreover, upon information and belief, former Chief Manley and current Chief Joseph Chacon, have not modified their training to ensure that innocent people are not shot with kinetic projectiles.

48. Nor, apparently, did Manley or Chacon reform the dangerous paramilitary culture of the police academy, discipline any of the individuals in charge of running it, or change its practice of officers ignoring their duties to intercede and stop unconstitutional conduct by APD officers.

## IV. CAUSES OF ACTION

### A. Excessive Force Used by John Doe

49. At least one Austin Police Department Officer, while acting under color of law, used excessive force on L.N.R. when she posed no danger to anyone.

50. This use of force by John Doe was wholly excessive to any conceivable need, objectively unreasonable in light of clearly established law, and directly caused L.N.R. to suffer serious injuries. Therefore, her clearly established Fourth Amendment right to be free from excessive force and unreasonable seizure was violated.

51. As a direct and proximate result, L.N.R. suffered and continues to suffer significant injuries, and Plaintiff has suffered damages.

### B. 42 U.S.C. §1983 Claim Against the City of Austin

52. Plaintiff incorporates all of the foregoing as if alleged herein.

53. Defendant City of Austin, had the following policies, practices, or customs in place when at least one APD police officer used brutally excessive force on L.N.R. and injured her:

    a. Shooting kinetic projectiles at people who posed no danger;

    b. Using, authorizing, and/or tolerating excessive force;

    c. Failing to adequately investigate, discipline, supervise, or train officers;

    d. Failing to adequately supervise officers;

    e. Failing to adequately train officers concerning the use or misuse of kinetic projectiles

    f. Not intervening to stop constitutional violations, including but not limited to excessive force;

    g. Training officers to act as paramilitary "warriors," and creating an "us vs. them" culture;

    h. Failing to train or instruct officers about specific incidents it considers unreasonable, excessive force, or in violation of the Constitution; and

54. Each of the policies, practices, or customs delineated above was actually known, constructively known, and/or ratified by the City of Austin and its policymakers, and was promulgated with deliberate indifference to L.N.R.'s Fourth and/or Fourteenth Amendment rights under the United States Constitution. Moreover, the known and obvious consequence of these policies, practices, or customs was that Austin Police Department officers would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

55. Moreover, former Chief Manley and current Chief Chacon were also directly aware of multiple similar incidents in which unconscionable, excessive, and unreasonable force was used by officers firing bean bag shotguns at people, but they did not remedy the misconduct in light of this pattern of abuse. In fact, Chief Chacon and Chief Manley were aware of numerous examples of officers misusing bean bag shotguns and committing excessive force yet they failed to discipline or even counsel them. Rather, they acquiesced in the unlawful conduct by permitting the abusive conduct to continue and by failing to even look into allegation that multiple officers – including themselves and the highest level of APD's command structure – did not intercede to stop dangerous, unconstitutional conduct in violation of the purported policies. Thus, the City is also

directly liable for its policymakers' failure to train, supervise, and correct misconduct, which proximately caused L.N.R. to suffer injuries and have her rights violated.

56. Consequently, the policies delineated above were a moving force of constitutional deprivations and injuries, and proximately caused her severe damages.

57. Accordingly, Plaintiff brings this claim against the City pursuant 42 U.S.C. § 1983.

## V. DAMAGES

58. Plaintiff seeks the following damages:

   a. Past and future medical expenses;

   b. Past and future physical pain and mental anguish;

   c. Past and future impairment;

   d. Past and future disfigurement;

   e. Attorneys' fees pursuant to 42 U.S.C. § 1988; and

   f. Exemplary damages against Defendant John Doe only.

## VI. PRAYER FOR RELIEF

59. To right this injustice, Plaintiff requests the Court:

   a. Award compensatory damages against Defendants;

   b. Award punitive damages against Defendant Doe only;

   c. Award Plaintiff costs and fees, including but not limited to expert fees and attorneys' fees, pursuant to 42 U.S.C. § 1988;

   d. Award pre-judgment and post-judgment interest at the highest rate allowable under the law; and,

   e. Award and grant such other just relief as the Court deems proper.

Dated: January 6, 2022

9

        Respectfully submitted,

        **EDWARDS LAW**
        603 West 17th Street
        Austin, Texas 78701
        Tel.  512-623-7727
        Fax.  512-623-7729

        By   /s/ Jeff Edwards
            JEFF EDWARDS
            State Bar No. 24014406
            jeff@edwards-law.com
            MICHAEL SINGLEY
            State Bar No. 00794642
            mike@edwards-law.com
            DAVID JAMES
            State Bar No. 24092572
            david@edwards-law.com
            PAUL SAMUEL
            State Bar No. 24124463
            paul@edwards-law.com